UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY MILLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 5896 |
| v. | ) | |
| | ) | Chief Judge Ruben Castillo |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Anthony Mills ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration[1] ("SSA") denying Plaintiff's application for Supplemental Security Income ("SSI") based on disability. Plaintiff requests that the decision of the Administrative Law Judge ("ALJ") be set aside or, in the alternative, that the matter be reversed and remanded for further proceedings. Presently before the Court is the Commissioner's motion for summary judgment. For the reasons set forth below, the Commissioner's motion is denied, and the case is remanded for further proceedings consistent with this opinion.

## RELEVANT FACTS[2]

Plaintiff was born on June 16, 1963, and is a resident of Chicago, Illinois. (A.R. 93.) Plaintiff's most recent employment history includes working as a sales associate, a stock clerk,

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security, replacing Michael J. Astrue. Pursuant to Federal Rule of Civil Procedure 25, Carolyn W. Colvin is automatically substituted as defendant.

[2] Citations to (R. _) refer to the record number that a document is assigned on the docket for this case. Citations to (A.R. _) refer to the administrative record of these proceedings, which was filed as (R. 15) on the docket.

and a loan processor at a bank. (A.R. 49-54, 210.) Plaintiff filed a claim for SSI on September 17, 2008. (A.R. 95.) Plaintiff's claim was denied on October 27, 2008. (A.R. 97-101.) Plaintiff filed for reconsideration on January 12, 2009, but his request for reconsideration was denied on June 2, 2009. (A.R. 106.) Plaintiff requested an SSA hearing on July 6, 2009. (A.R. 111.) That hearing was held before an ALJ on August 23, 2010. (A.R. 46.) On November 18, 2010, the ALJ issued a decision denying Plaintiff's claim for SSI benefits. (A.R. 39.)

## I.    Medical Evidence

Plaintiff suffers from several medical issues, including sickle cell trait, congestive heart failure, hypertension, lower extremity edema, chronic kidney disease, and asthma. (A.R. 258, 291, 676.) Plaintiff alleges that the symptoms brought on by these impairments, including fatigue, shortness of breath, and his need to elevate his feet, prevent him from working. (A.R. 84.)

Plaintiff's relevant medical history began on May 30, 2008, when he was hospitalized at Mercy Hospital and Medical Center ("Mercy") complaining of shortness of breath for the prior two to three days. (A.R. 249-50.) Plaintiff was diagnosed with congestive heart failure, a scrotal infection, and lower extremity edema. (A.R. 272-308.) The attending physician, Dr. Theodore Christou, noted that Plaintiff's edema was caused by his congestive heart failure. (A.R. 272)

Plaintiff was evaluated by Dr. Sujatha Neerukonda on October 22, 2008. (A.R. 675.) Dr. Neerukonda opined that Plaintiff suffered from congestive heart failure, sickle cell trait, uncontrolled hypertension, and an abdominal hernia. (A.R. 682.) Dr. Neerukonda found that Plaintiff's capacity to walk, push, pull, climb, and perform activities of daily living was reduced by 20-50%. (A.R. 679.) Further, Dr. Neerukonda found that Plaintiff could lift no more than twenty pounds at a time with frequent lifting of up to ten pounds. (*Id.*)

Plaintiff was hospitalized at Provident Hospital of Cook County ("Provident") on January 5, 2009, again complaining of shortness of breath. (A.R. 716.) Plaintiff was diagnosed with congestive heart failure, hypertension, and lower extremity edema. (*Id.*) While at Provident, Plaintiff was advised to elevate his lower extremities to reduce the swelling caused by his edema. (A.R. 702.)

Plaintiff was evaluated by Dr. Charles Kenney, a State agency physician, on May 28, 2009. (A.R. 772.) Dr. Kenney completed a physical residual functional capacity ("RFC") assessment that identified a primary diagnosis of congestive heart failure and a secondary diagnosis of hypertension. (A.R. 765.) Dr. Kenney reported that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds, could stand and walk for six hours in an eight-hour workday, could sit for about six hours in an eight-hour workday, and had no limitations in terms of pushing and pulling. (A.R. 766.) Dr. Kenney did not explain or identify any evidence that supported his conclusion. (*Id.*)

Plaintiff's treating physician, Dr. Naveed Mallick, completed a cardiac RFC assessment on July 1, 2009. (A.R. 798.) Dr. Mallick noted that he had treated Plaintiff since January 2009. (A.R 793.) Dr. Mallick reported that Plaintiff suffered from the following symptoms: chest pains, edema, shortness of breath, and fatigue. (*Id.*) Additionally, Dr. Mallick noted that Plaintiff was capable of performing a low-stress job, as long as Plaintiff was allowed up to four absences a month. (A.R. 794, 797.) Dr. Mallick opined that Plaintiff could frequently lift less than ten pounds, occasionally lift ten pounds, and rarely lift twenty pounds. (A.R. 796.) Dr. Mallick opined that Plaintiff's exertional limitations required that he be able to shift from sitting to standing at will, elevate his legs for 10% of a normal workday, and take three or four fifteen-

minute breaks during the day. (*Id.*) Dr. Mallick did not indicate the height of Plaintiff's leg elevation or how long Plaintiff could sit and stand in a normal workday. (A.R. 796.)

Dr. Mallick completed a second cardiac RFC assessment on August 23, 2010, and modified his findings from the previous year. (A.R. 810.) In 2010, Dr. Mallick noted that Plaintiff suffered from the following symptoms: shortness of breath, fatigue, and weakness. (*Id.*) The doctor opined that Plaintiff could sit for approximately two hours and stand for two hours in an eight-hour workday and that he required a ten-minute break every hour. (A.R. 811.) Dr. Mallick repeated his finding that Plaintiff would need a job where he could shift between sitting, standing, and walking at will. (*Id.*) Dr. Mallick opined that during a typical workday, Plaintiff's symptoms were frequently severe enough to interfere with the attention and concentration he would need to perform even simple work tasks. (*Id.*) Dr. Mallick adjusted his original findings with regard to Plaintiff's leg elevation limitations, finding that Plaintiff needed to elevate his legs for 15%, rather than 10% of the day. (A.R. 812.) Additionally, Dr. Mallick noted that Plaintiff needed to elevate his legs to waist level. (*Id.*) Dr. Mallick found that Plaintiff could occasionally lift less than ten pounds, rarely lift ten pounds, and never lift twenty or fifty pounds. (*Id.*)

## II. The ALJ Hearing

ALJ José Anglada conducted the SSA hearing on August 23, 2010. (A.R. 46.) Plaintiff appeared in person and was represented by his attorney, Sally Horton. (*Id.*) A vocational expert ("VE"), Richard Hamersma, provided additional testimony. (*Id.*)

### A. Plaintiff's Testimony

Plaintiff testified that he lives alone in a subsidized apartment and has completed one year of college. (A.R. 48-49.) Plaintiff testified that the last time he worked was in May 2007,

as a sales associate at a department store. (A.R. 49-50.) From March 1990 until December 1997, Plaintiff processed loan payments as a credit clerk at Citicorp. (A.R. 51-56.) In this position, Plaintiff was sometimes required to lift boxes that weighed ten to fifteen pounds, but he testified that he used a cart when he had to carry more than one box. (A.R. 56.) Plaintiff testified that he stopped working in May 2007 to care for his elderly grandmother, who died during Plaintiff's first hospitalization at Mercy in May 2008. (A.R. 57.)

Plaintiff testified that he was hospitalized at Mercy for chest pains in late May 2008 and was there diagnosed with congestive heart failure. (A.R. 58.) Plaintiff testified that, because he did not have a medical card, he could not refill the medication he was prescribed at Mercy when it ran out in September 2008. (A.R. 60.) Plaintiff checked himself into Provident on January 9, 2009, complaining of chest pains and shortness of breath. (A.R. 59.) Plaintiff gained roughly fifty pounds between the two hospitalizations. (*Id.*) Plaintiff testified that he received his medical card while at Provident, and since that time he has taken medication for his heart, blood pressure, and fluid retention. (A.R. 60, 62.)

Plaintiff testified that he has seen his primary care physician, Dr. Mallick, every three months since January 2009. (A.R. 61.) Further, Plaintiff testified that Dr. Mallick increased the dosage of his medication in March 2010 because his chest pains had grown more frequent and he had difficulty breathing. (A.R. 62.) Plaintiff testified that the medication did not alleviate his chest pains and that his doctors told him that chest pain is a symptom of his congestive heart failure. (A.R. 64.) Plaintiff further testified that he gets chest pains when he stands after sitting for long periods of time. (*Id.*) Plaintiff testified that he can walk about a block and stand for about a half-hour before he has to sit down. (A.R. 65.) Plaintiff testified that he could lift five to ten pounds, but he needs help if he has to carry something heavy. (*Id.*)

Plaintiff testified that he did not explore the option of vocational rehabilitation and that he has not tried to find a job because he has more bad days than good days. (A.R. 70-71.) When asked to elaborate on what he means by "good" and "bad" days, Plaintiff testified that on good days he can do housework, but he can only clean for ten to twenty minutes before losing his breath and he has to take ten-minute breaks between chores because he gets short of breath. (A.R. 74-75.) Plaintiff testified that he can cook light things, like salads or sandwiches, but he cannot cook things that take a long time or require constant monitoring. (A.R. 65-66.) He can walk two blocks to the grocery store if he only needs little things, like bread or milk, but he has to rest for five to ten minutes after walking a block. (A.R. 68, 73-74.) Plaintiff stated that on bad days, he refrains from doing any housework or leaving the house, and he is restricted to sitting or lying down. (A.R. 75.) Plaintiff testified that he experiences seven to eight bad days a month. (Id.)

Plaintiff further testified that he takes two- to three-hour naps four or five days a week. (A.R. 83.) Plaintiff testified that he wakes up short of breath three to four times a week. (A.R. 72.) Additionally, Plaintiff stated that he has trouble sleeping through the night. (A.R. 83.) He stated that he gets winded easily, even from standing still. (A.R. 74.) Plaintiff testified that he spends his days reading, watching television, and visiting with his friend who lives a floor below him. (A.R. 68-69.)

Plaintiff weighed 207 pounds at the time of the hearing, having gained fifteen pounds over the two months leading up to the hearing. (A.R. 77.) Plaintiff testified that his doctors told him that his weight gain was due to fluid retention. (A.R. 77-78.) Plaintiff also testified that he takes diuretics every morning. (A.R. 78.) Plaintiff testified that walking and standing cause his ankles, hands, and wrists to swell, and he experiences swelling every day. (A.R. 79-80.)

Plaintiff testified that he elevates his feet to a little bit higher than waist level to relieve the swelling. (A.R. 80.) Plaintiff opined that he cannot work because he is frequently exhausted and short of breath, and because he needs to keep his feet elevated. (A.R. 84.)

### B. Vocational Expert's Testimony

The VE testified that he listened to Plaintiff's testimony, examined his file, and prepared a summary of Plaintiff's work history. (A.R. 85.) The VE listed credit clerk, sales clerk, and stock clerk as Plaintiff's previous positions. (A.R. 85-86.) The ALJ then asked the VE about three hypothetical persons. (A.R. 86-88.) The ALJ first asked the VE about an individual in the "younger age category" with Plaintiff's education and work history who could lift and carry no more than 20 pounds occasionally and ten pounds frequently, could stand or walk for approximately four hours in an eight-hour workday, could sit for six hours with normal rest periods, was unable to work at heights, climb ladders, or frequently negotiate stairs, could only occasionally stoop, squat, crouch, or crawl, could not be exposed to moving or dangerous machinery, and could not perform "highly stressful" work. (A.R. 86-87.) The VE testified that an individual with those restrictions could not perform Plaintiff's previous jobs as a sales clerk or a stock clerk, but could perform his previous job as a credit clerk. (A.R. 87.) The ALJ then asked the VE to consider the restrictions listed in Dr. Mallick's 2009 RFC assessment. (*Id.*) The VE concluded that a person with the restrictions indicated in Dr. Mallick's 2009 RFC assessment could not perform any job. (*Id.*) The VE then considered the limitations Dr. Mallick listed in his 2010 assessment and testified that those restrictions would also preclude a person from working Plaintiff's past jobs or any other job. (A.R. 87-88.)

The VE further testified that the general tolerance for off-task time is around 10-12%, and an individual who needed a ten-minute break every hour would exceed that tolerance. (A.R.

88.) The VE stated that an individual who needed the option to sit or stand at will would be able to perform the job of a credit clerk, but not a sales clerk or stock clerk. (A.R. 88-89.) The VE testified that slight leg elevation would not affect Plaintiff's ability to perform his previous jobs, but elevation at chest level or higher would preclude all jobs. (A.R. 89.) The VE testified that needing two days off work per month would preclude an individual from working any job. (A.R. 90.)

## III.    The ALJ's Decision

On November 18, 2010, the ALJ concluded that Plaintiff had not been disabled since September 17, 2008, the date his application was filed. (A.R. 32.) To make the determination that Plaintiff was not disabled, the ALJ conducted the five-step sequential analysis required by Social Security regulations. 20 C.F.R. § 416.920(a); (A.R. 32-34.) He first determined that Plaintiff had not engaged in substantial gainful activity since September 17, 2008, the date of his application. (A.R. 34.) At step two, the ALJ concluded that Plaintiff suffered from the severe impairment of congestive heart failure. (*Id.*) The ALJ noted that Plaintiff's congestive heart failure caused his chest pains, headaches, shortness of breath, and edema, and that he would continue to suffer from those symptoms. (*Id.*) The ALJ found that Plaintiff's hypertension, asthma, and obesity were non-severe impairments, as they did not significantly limit Plaintiff's ability to perform basic work activities. (*Id.*) The ALJ noted that according to the medical records, Plaintiff's hypertension and asthma were stable, and there was no evidence that his obesity severely limited his abilities. (*Id.*)

At step three, the ALJ concluded that Plaintiff's combination of impairments did not meet or equal any of the listed impairments contained within 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.*) Accordingly, the ALJ assessed Plaintiff's RFC and concluded that he could perform light

work as defined in 20 C.F.R. § 416.967(b), except that he could not work at unprotected heights, climb ladders, or frequently negotiate stairs; could only stoop, squat, crouch, or crawl occasionally; and could not be exposed to hazardous machinery or to highly stressful work. (A.R. 35.) The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce Plaintiff's alleged symptoms (fatigue, shortness of breath, and needing to elevate his feet), but that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not credible because they were inconsistent with the ALJ's RFC assessment. (A.R. 36.) The ALJ supported his conclusion by listing activities Plaintiff could perform "without difficulty": cooking twice a day, doing laundry, using public transportation, and grocery shopping for himself. (A.R. 35.) The ALJ also noted that Plaintiff could only walk one block without needing to rest for five to ten minutes, that he could stand and sit for 30 minutes, that he elevated his feet higher than 90 degrees to relieve swelling every day, and that he was easily winded. (A.R. 35-36.)

The ALJ reviewed Plaintiff's medical history and noted that he "was recently diagnosed with congestive heart failure, hypertension, lower extremity edema, chronic kidney disease, and asthma." (A.R. 36.) The ALJ afforded great weight to Dr. Kenney's opinion "because, based on the medical evidence of record and the claimant's testimony, the claimant is able to perform light work related activities. Though the claimant has impairments, these impairments do not preclude his [sic] from being able to perform any occupation." (A.R. 37.) The ALJ explained that he afforded some weight to Dr. Mallick's (Plaintiff's treating physician) 2009 opinion because "Dr. Mallick stated that the claimant was able to do light physical activities with some restrictions." (*Id.*) The ALJ also afforded some weight to Dr. Neerukonda's opinion because Dr. Neerukonda found that Plaintiff was "able to perform light work related activities." (*Id.*) The

ALJ stated that he only afforded some weight to Dr. Neerukonda's opinion because his findings regarding Plaintiff's reduced ability to walk, bend, climb, push, and pull were not completely reliable, as Plaintiff was off his medication during the examination that produced those findings. (A.R. 37-38.) The ALJ did not afford any weight to Dr. Mallick's 2010 opinion because Dr. Mallick's findings that Plaintiff could not sit, stand, or walk for more than two hours in an eight-hour workday, would have to take unscheduled breaks, and would have to elevate his legs for at least 15% of the workday were "inconsistent with medical evidence of record and other more credible medical opinions." (A.R. 37.) The ALJ further stated that there was no medical evidence that Plaintiff's limitations increased between Dr. Mallick's 2009 and 2010 opinions, or that he would need to have four or more absences a month. (A.R. 37-38.)

Finally, the ALJ compared the Plaintiff's RFC with the "physical and mental demands" of his past relevant work and considered the testimony of the vocational expert. (A.R. 38.) He concluded that Plaintiff could perform his past job as a credit clerk. (*Id.*) Accordingly, the ALJ determined that Plaintiff was not disabled as defined by 42 U.S.C. § 1382c(a)(3)(A) and therefore was not entitled to SSI. (*Id.*)

## LEGAL STANDARD

In reviewing an ALJ's decision, the Court determines whether the ALJ's factual determinations are supported by substantial evidence and based on proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) (quoting *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001)) (internal quotation marks omitted). "Under this standard, the ALJ's decision, if supported by substantial evidence, will be upheld even if an

alternative position is also supported by substantial evidence." *Id.* (citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)). While an "ALJ is not required to mention every piece of evidence," he must establish an "accurate and logical bridge" between the evidence and his conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)). In reviewing the ALJ's conclusions, a court "will conduct a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." *Briscoe*, 425 F.3d at 351 (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)) (internal quotation marks omitted). It is not the role of the reviewing court, however, to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

## ANALYSIS

Under Title XVI of the Social Security Act, a disabled person is eligible for SSI benefits if that person meets certain requirements pertaining to income. 42 U.S.C. § 1381a. A claimant is disabled for the purposes of SSI eligibility "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Under the Act, a claimant is disabled only if

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

11

The Social Security regulations set forth a sequential five-step test for determining whether a claimant qualifies for SSI benefits. 20 C.F.R. § 416.920(a). First, the ALJ must determine whether the claimant is performing a substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaging in a substantial gainful activity, the claimant is not disabled. *Id.* Second, the ALJ must consider whether the claimant has a severe medically determinable impairment, or combination of impairments, that meets a twelve-month duration requirement or is expected to result in death. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. If the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 416.920(c). Third, the ALJ must consider the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant's impairment meets or equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1, and meets the duration requirement, then the claimant is considered disabled. *Id.*; 20 C.F.R. § 416.920(d). Fourth, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must then assess a claimant's RFC and past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(e). If a claimant can still perform his past relevant work, a claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). Fifth, the ALJ considers his assessment of a claimant's RFC in conjunction with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, he is disabled. *Id.* "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

Here, as discussed above, the ALJ followed the five-step sequential analysis and determined that (1) Plaintiff had not engaged in substantial gainful activity since September 17,

2008, the date he filed his application; (2) Plaintiff suffered from the severe impairment of congestive heart failure; (3) Plaintiff's impairments or combination of impairments did not meet or medically equal one of the listed impairments; and (4) Plaintiff's RFC indicated that he could perform light work and was capable of performing his past work as a credit clerk. (A.R. 34-38.) Accordingly, the ALJ concluded that Plaintiff was not disabled from September 17, 2008, the date the application was filed. (A.R. 32.)

Plaintiff alleges that the ALJ committed reversible error in evaluating Plaintiff's credibility, in evaluating the medical opinions of record, and in determining Plaintiff's RFC. (R. 20, Pl.'s Br. at 1.) The Court addresses each alleged error in turn.

## I.     The ALJ's Credibility Determination

As an initial matter, Plaintiff alleges that the ALJ erred in evaluating his credibility under SSR 96-7P. (*Id.* at 14.) Specifically, Plaintiff argues that the ALJ determined his RFC first and then rejected Plaintiff's statements that did not support that RFC. (*Id.* at 15.) He further contends that the ALJ failed to evaluate the credibility of Plaintiff's statements that he needs to elevate his legs and take naps four or five times a week. (*Id.* at 15-16.)

Because the ALJ is "in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). When assessing a claimant's credibility, an ALJ must consider the case record in its totality, including objective medical evidence of the claimant's impairments, the claimant's daily activities and limitations, claims of pains or other symptoms, and treatment. *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (citing *Scheck*, 357 F.3d at 703); *see also* SSR 96-7P, 61 Fed. Reg. 34483, 34485 (July 2, 1996) (listing factors that ALJs "*must* consider in addition to the objective medical

evidence when assessing the credibility of an individual's statements" because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone") (emphasis added). On review, this Court "merely examine[s] whether the ALJ's determination was reasoned and supported." *Prochaska*, 454 F.3d at 738 (citing *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). While an ALJ's credibility determination is afforded a high level of deference, *Shideler*, 688 F.3d at 310-11, an ALJ must provide some rationale for that determination, *Bjornson v. Astrue*, 671 F.3d 640, 644-46 (7th Cir. 2012). "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." SSR 96-7P, 61 Fed. Reg. at 34485-86.

Here, the ALJ did not provide any rationale for his credibility determination. After summarizing Plaintiff's testimony, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(A.R. 36.) The ALJ then proceeded to discuss Plaintiff's medical records without explaining why he found Plaintiff's testimony about the "intensity, persistence and limiting effects" of his symptoms incredible or pointing to any evidence in the record to substantiate that finding. This credibility finding is nearly verbatim the boilerplate language that is consistently criticized by the Seventh Circuit as failing to provide any meaningful and reviewable information about what evidence the ALJ considered in making his credibility determination. *Bjornson*, 671 F.3d at 644-46 (examining in-depth the problems with using this sort of template to ignore claimants' credibility and ending with an admonishment that the SSA "had better take a close look at the utility and intelligibility of its 'templates'"); *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th

Cir. 2012) ("Credibility findings must have support in the record, and hackneyed language seen universally in ALJ decisions adds nothing."); *Punzio v. Astrue*, 630 F.3d 704, 709 (7th Cir. 2011) ("[T]o read the ALJ's boilerplate credibility assessment is enough to know that it is inadequate and not supported by substantial evidence. That is reason enough for us to reverse the judgment."). Furthermore, the phrase "to the extent they are inconsistent with the above [RFC]" suggests that the ALJ first determined what Plaintiff's RFC would be and then used that determination to assess Plaintiff's credibility, a reversal of the proper order of an RFC assessment. *Bjornson*, 671 F.3d at 645. This is problematic because the assessment of a claimant's ability to work frequently "depend[s] heavily on the credibility of [his] statements concerning the 'intensity, persistence and limiting effects' of [his] symptoms." *Id.*

The Commissioner argues that the ALJ's use of boilerplate language was not a reversible error in this case because the ALJ properly "considered the objective medical evidence such as [Plaintiff's] activities (cooking, shopping, socializing)," his medications, his treatment history, his testimony, and "the multiple physician opinions." (R. 28, Def.'s Resp. at 13.) The Commissioner cites *Filus v. Astrue*, 694 F.3d 863, 867 (7th Cir. 2012), to support her position that the ALJ's use of boilerplate language was not problematic, and *Schmidt v. Barnhart*, 395 F.3d 737, 747 (7th Cir. 2005), to support her position that the ALJ's credibility determination is sufficiently detailed and supported by substantial evidence. (*Id.* at 12-13.) In *Filus*, noting that the ALJ's credibility determination used the same boilerplate language the Seventh Circuit criticized in *Bjornson*, the court stated that "[i]f the ALJ has otherwise explained his conclusion adequately, the inclusion of this language can be harmless." 694 F.3d at 868. The Seventh Circuit found that the ALJ in *Filus* had grounded his credibility determination in the evidence in the record. *Id.* For example, the ALJ "considered [the plaintiff's] testimony about the limiting

effects of his pain along with his testimony that he regularly completed his daily household activities without any pain medication." *Id.* at 869. In addition to stating the evidence he relied on, the ALJ noted that the plaintiff had a history of malingering, a finding that supported his conclusion that the plaintiff's testimony was not credible. *Id.* at 867. The Seventh Circuit thus concluded that ALJ sufficiently articulated his reasoning, making his use of the boilerplate language harmless. *Id.* at 868. Similarly, in *Schmidt*, the ALJ's decision noted "the absence of objective medical evidence to support the severity of the pain to which [the plaintiff] testified," in addition to the facts that the plaintiff's "daily living activities were not significantly restricted," that he was not receiving any treatment or medication for his conditions at the time of the hearing, "and that his alleged pain did not prevent him from engaging in substantial gainful activity for several months after he allegedly became disabled." 395 F.3d at 747. "By considering these factors and explaining how they factored into his credibility analysis, the ALJ properly followed the requirements for evaluating the credibility of a claimant's subjective complaints." *Id.* Additionally, the Seventh Circuit found that the ALJ's credibility determination was "supported by substantial record evidence" and was "sufficiently detailed that [the court was] able to trace its path of reasoning." *Id.* Accordingly, the Seventh Circuit affirmed the ALJ's finding that the plaintiff's subjective complaints were incredible. *Id.*

Here, in contrast, the ALJ did not consider Plaintiff's testimony about his limitations in performing his daily activities. Listing some of Plaintiff's daily activities, the ALJ stated that Plaintiff "cooks twice a day" and "is able to shop for himself." (A.R. 35.) These statements do not accurately reflect Plaintiff's testimony. Plaintiff never testified that he "cooks twice a day"; instead, he testified that he cooks "light things" and that when he is short of breath, he "just make[s] a sandwich . . . to take [his] medicine." (A.R. 65-67.) Plaintiff also testified that if he is

only buying bread or milk, for instance, he can pace himself and walk the two blocks to the

grocery store, (A.R. 68), but that he has someone accompany him if he is buying more than that

because he cannot carry it himself, (A.R. 65). The Seventh Circuit has consistently warned that

an ALJ cannot "disregard a claimant's limitations in performing household activities." *Moss v.*

*Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *see also Craft*, 539 F.3d at 680. Here, the ALJ

disregarded and misconstrued Plaintiff's testimony regarding his limitations in performing

everyday activities.

The ALJ also failed to point to the medical evidence that contradicted Plaintiff's

testimony. When a claimant's testimony is supported by medical evidence in the record, the ALJ

must clearly explain his finding that the testimony is not credible. *See Clifford*, 227 F.3d at 872;

*Lopez*, 336 F.3d at 539-40. Here, Plaintiff's testimony about the limiting effects of his shortness

of breath and his edema are strongly supported by Dr. Mallick's 2010 report. (*See* A.R. 810-12.)

Furthermore, Dr. Kenney opined that Plaintiff's allegations were credible. (A.R. 772.) Because

the ALJ did not address this evidence, or provide any other reason to support his credibility

finding, he erred in making his credibility determination. *See Prochaska*, 454 F.3d at 738.

The Commissioner cites broadly to the ALJ's summary of the medical evidence to show

that he considered such evidence in making his credibility determination. (R. 28, Def.'s Mem. at

13) (citing A.R. 35-38). The part of the ALJ's opinion in which he summarized the record

before him is not sufficiently specific to show that he actually *analyzed* that evidence in making

his credibility determination. SSR 96-7P states:

> It is not sufficient to make a conclusory statement that "the individual's
> allegations have been considered" or that "the allegations are (or are not)
> credible." . . . The determination or decision must contain specific reasons for the
> finding on credibility, supported by the evidence in the case record, and must be
> sufficiently specific to make clear to the individual and to any subsequent

reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7P, 61 Fed. Reg. at 34486. The ALJ's failure to explain what evidence formed the basis of his credibility determination is sufficient grounds for reversing and remanding his decision. *Punzio*, 630 F.3d at 709. On remand, the ALJ must clearly explain the reasons and evidence that form the basis of his credibility determination. Unless the ALJ properly finds Plaintiff's testimony to be incredible, he must consider Plaintiff's limitations in performing daily activities when determining Plaintiff's RFC.

## II.    The ALJ's Evaluation of the Medical Opinions of Record

Plaintiff also alleges that the ALJ erred in his evaluation of the medical record. (R. 20, Pl.'s Br. at 6-11.) Specifically, Plaintiff argues that the ALJ should have afforded more weight to the opinions of Dr. Mallick, Plaintiff's treating physician, and that he failed to sufficiently explain his reasons for affording great weight to the opinion of Dr. Kenney, a non-treating physician. (*Id.* at 6.)

The Social Security regulations instruct ALJs to give controlling weight to the medical opinion of a treating physician if it is well-supported by objective medical evidence and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2). An ALJ should "always give good reasons in [his] notice of determination or decision for the weight [he] give[s] [a] treating source's opinion." *Id.* "When an ALJ decides to favor another medical professional's opinion over that of a treating physician, the ALJ must provide an account of what value the treating physician's opinion merits." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (finding that a cursory statement that a treating physician's opinion is contradicted by some facts in the record is not sufficient to allow the court to determine that the ALJ "engaged in

the careful analysis [of the treating physician's opinion] required by the regulations and case law").

## A. Dr. Mallick's Opinions

### 1. Dr. Mallick's 2009 Opinion

Plaintiff alleges that the ALJ violated the requirements of 20 C.F.R. § 416.927(c)(2) because he failed to provide a "good reason" for considering Dr. Mallick's 2009 opinion to be less credible than the opinion of Dr. Kenney, a non-treating physician. (R. 20, Pl.'s Br. at 8.) The ALJ explained that he afforded some weight to Dr. Mallick's 2009 opinion because "[i]n July 2009, Dr. Mallick stated that the claimant was able to do light physical activities with some restrictions." (A.R. 37, 38.) That statement constitutes the entirety of the ALJ's explanation for affording only some weight to Dr. Mallick's 2009 opinion.

The ALJ failed to address, for example, Dr. Mallick's opinion that Plaintiff needed to elevate his legs for 10% of the workday, and the ALJ summarily dismissed Dr. Mallick's finding that Plaintiff required up to four absences a month. (A.R. 38, 796.) The ALJ did not provide a good reason—or *any* reason—for failing to afford controlling weight to Dr. Mallick's 2009 opinion, as he is required to do by 20 C.F.R. § 416.927(c)(2). In her brief, the Commissioner does not defend the ALJ's partial consideration of Dr. Mallick's 2009 opinion. (*See* R. 28, Def.'s Mem. at 7-9.) While an ALJ may decline to afford controlling weight to a treating physician's opinion if it is inconsistent with other substantial medical evidence, he must explain what evidence he found to diminish its value. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). Given the ALJ's cursory treatment of Dr. Mallick's 2009 opinion, this Court cannot review his reasons for declining to afford it controlling weight. *See id*; *Hickman v. Apfel*, 187 F.3d 683, 689 (7th. Cir. 1999). On remand, the ALJ must consider all the medical evidence of

record and provide "good reasons" for the weight he affords Dr. Mallick's opinion and an account of the value that Dr. Mallick's 2009 opinion merits. *See* 20 C.F.R. § 416.927(c)(2); *Jelinek*, 662 F.3d at 811.

## 2. Dr. Mallick's 2010 Opinion

Plaintiff also challenges the sufficiency of the ALJ's explanation for rejecting Dr. Mallick's 2010 opinion. (R. 20, Pl.'s Br. at 9.) The ALJ stated that there was "no medical evidence that his impairments caused greater limitations between the two opinions," and that Dr. Mallick's 2010 findings of greater limitations were "inconsistent with medical evidence of record and other more credible medical opinions." (A.R. 37.) Plaintiff argues that there is no finding of greater limitations in the later opinions because Dr. Mallick's 2009 and 2010 opinions are substantially similar with only subtle differences between the two opinions. (R. 20, Pl.'s Br. at 9-10.) Plaintiff points out, for example, that "in the 2009 opinion, Dr. Mallick did not offer an opinion about how high [Plaintiff's] legs should be elevated, and in the 2010 opinion, he opined that [Plaintiff's] legs should be elevated to waist level for approximately 15% of an eight-hour workday." (*Id.* at 10.) Plaintiff argues that Dr. Mallick's 2010 findings that he could sit and stand for a total of two hours in an eight-hour workday and that he required a ten-minute break every hour are consistent with the 2009 opinion and provide clarification. (R. 32, Pl.'s Reply at 2.) The Commissioner contends that it was "entirely reasonable for the ALJ to discount the second opinion when there was no medical evidence to justify the change in RFC." (R. 28, Def.'s Mem. at 8-9.)

The ALJ found that Dr. Mallick's 2010 report was "inconsistent with medical evidence of record and other more credible medical opinions," specifically his findings that Plaintiff could not sit, stand, or walk for more than two hours in an eight-hour workday, would have to take

unscheduled breaks, and have to elevate his legs for at least 15% of the workday." (A.R. 37.)
The medical record, however, is replete with recommendations that Plaintiff elevate his legs to
reduce swelling. (*See, e.g.*, A.R. 301, 702, 796.) In addition, there is no evidence that Plaintiff
does *not* need to elevate his legs; neither Dr. Kenney nor Dr. Neerukonda opined on the issue at
all. The ALJ "may have a sound basis for rejecting the plentitude of evidence bolstering
[Plaintiff's] claim, but the record reveals no such basis." *Young v. Sec'y of Health & Human
Servs.*, 957 F.2d 386, 392 (7th Cir. 1992). This Court is unable to adequately review the ALJ's
decision "without a clear articulation of the reason [he] rejected this evidence." *Id.* On remand,
if the ALJ finds Dr. Mallick's 2010 report to be "inconsistent with medical evidence of record,"
he must point to the evidence in the record that provide such inconsistency.

### B. Dr. Kenney's Opinion

Plaintiff alleges that the ALJ afforded too much weight to the opinion of Dr. Kenney, a
non-treating physician. (R. 20, Pl.'s Br. at 10-11.) Plaintiff argues that the ALJ failed to
sufficiently explain why he found Dr. Kenney's opinion more credible than Dr. Mallick's, (*id.* at
8), and that the only reason he gave for affording great weight to Dr. Kenney's opinion—that it
conformed with his own RFC finding—is not acceptable, (*id.* at 10.) The Commissioner argues
that the ALJ explained that he afforded great weight to Dr. Kenney's opinion because "the
medical evidence of record and the claimant's testimony showed that claimant is able to perform
light work related activities." (R. 28, Def.'s Mem. at 9-10) (quoting A.R. 37) (internal quotation
marks omitted).

"Unless a treating source's opinion is given controlling weight, the [ALJ] must explain in
the decision the weight given to the opinions of a State agency." 20 C.F.R. § 416.927(e)(2)(ii).
The ALJ's explanation must be sufficiently detailed to provide a "glimpse into the reasoning

behind [his] decision" such that this Court may make "an informed review." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). First, the ALJ's rationale for affording great weight to Dr. Kenney's opinion suffers from the same flaw as his rationale for his credibility determination of plaintiff: he seems to have put the cart before the horse by determining the RFC before he weighed the medical opinions.[3] The Social Security regulations require an ALJ to weigh the evidence *before* he determines the RFC, not the other way around. *See* SSR 96-8P, 61 Fed. Reg. 34474, 34477 (July 2, 1996) ("The RFC assessment must be based on *all* of the relevant evidence in the case record"). The ALJ's explanation that he afforded great weight to Dr. Kenney's opinion because Plaintiff "is able to perform light work related activities" is not sufficiently detailed to allow the Court to determine that the ALJ considered Dr. Kenney's opinion before determining the RFC and does not meet the requirements of 20 C.F.R. § 416.927(e)(2)(ii).

Second, after a thorough review of the record, this Court cannot make sense of the ALJ's determination that Dr. Kenney's opinion was more consistent with "the medical evidence of record and the claimant's testimony." (A.R. 37.) Dr. Kenney's finding that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds, (A.R. 766), is inconsistent with Plaintiff's testimony that he can lift five to ten pounds but needs help if he has to carry something heavy, (A.R. 65). Dr. Kenney's finding that Plaintiff could stand and sit for six hours an in an eight-hour workday, (A.R. 766), is inconsistent with Plaintiff's testimony that he gets winded from standing still, (A.R. 74). Additionally, both of these findings of Dr. Kenney's are

---

[3] This suspicion is bolstered by the fact that the ALJ did not mention in his opinion Dr. Kenney's finding that "[t]he claimant's allegations are credible." (A.R. 772.) If the ALJ had afforded Dr. Kenney's opinion great weight because it was well-reasoned and supported, instead of because it supported the RFC determination he had already made, it is puzzling to the Court why he did not consider Dr. Kenney's affirmation of Plaintiff's credibility.

inconsistent with Dr. Mallick's 2009 and 2010 opinions. (A.R. 796-97, 811-12.) Given these inconsistencies and the ALJ's failure to point to medical evidence that supports his conclusion, this Court cannot determine that the ALJ's decision to afford Dr. Kenney's opinion great weight is supported by substantial evidence. *See Scheck*, 357 F.3d at 699; *Zurawski*, 245 F.3d at 889.

Because the ALJ failed to provide "good reasons" for the weight he afforded Dr. Mallick's opinions, failed to explain the weight he afforded to Dr. Kenney's opinion, and failed to point to substantial evidence to support his conclusions about the appropriate weight to afford to the medical opinions, the issue of how the ALJ afforded weight to the medical opinions of record is remanded. On remand, the ALJ must provide good reasons for the weight he affords Dr. Mallick's opinions, articulate the reasons for the weight he affords Dr. Kenney's opinion, explain his reasons for accepting or rejecting medical findings in the record, and indicate the evidence in the record that supports these conclusions. *See Carlson*, 999 F.2d at 181.

## III.     The ALJ's RFC Assessment

Plaintiff next argues that the ALJ erred in assessing Plaintiff's RFC. Specifically, Plaintiff argues that the ALJ failed to explain how he considered Plaintiff's limitations in making his RFC assessment or how the medical evidence "demonstrated a capacity to perform light work." (R. 20, Pl.'s Br. at 11.) Plaintiff also argues that the ALJ failed to consider Plaintiff's obesity in his RFC assessment. (*Id.* at 13.) The Court discusses each argument in turn.

### A.     The ALJ's Consideration of Plaintiff's Limitations

Plaintiff alleges that the ALJ did not sufficiently explain how he factored Plaintiff's limitations into his RFC determination. (*Id.* at 11.) The Commissioner argues that the "ALJ discussed the medical opinions that supported his RFC assessment" and noted that he relied on the reports of physicians who concluded that Plaintiff could perform light work. (R. 28, Def.'s

Mem. at 10-11.) She contends that Plaintiff has failed to point to evidence that suggests he could not perform light work. (*Id.* at 11.)

At the fourth step in the analysis, the ALJ must assess the claimant's RFC and ability to engage in past work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(e). A claimant's RFC is an "assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work- related physical and mental activities." SSR 96-8P, 61 Fed. Reg. at 34475. When the ALJ finds that one or more of a claimant's impairments are severe, he must "consider the *aggregate* effect of [the] entire constellation of ailments—including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (*per curiam*).

Here, the ALJ concluded that Plaintiff has the severe impairment of congestive heart failure and that Plaintiff's impairment also causes his edema. (A.R. 34.) The ALJ went on to conclude that Plaintiff could perform light work[4] with some restrictions, (A.R. 35), despite the fact that the VE testified that an individual required to elevate his legs to waist level or higher would be unable to perform "any type of work." (A.R. 89.) The ALJ stated that his finding was based on a consideration of Plaintiff's "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (A.R. 35.)

The ALJ's RFC assessment did not account for all of Plaintiff's limitations—specifically, it did not explain how Plaintiff's edema factored into the assessment or how the accompanying need to elevate his legs would affect his ability to perform light work. Plaintiff's edema was

---

[4] "Light work" entails frequent lifting of up to ten pounds, occasional lifting of up to 20 pounds, and "a good deal of walking or standing." 20 C.F.R. § 416.967(b).

mentioned extensively in the record, and he was advised on more than one occasion to elevate his legs to relieve the accompanying swelling. (*See, e.g.*, A.R. 301, 379, 702, 793, 796, 812.) Plaintiff's testimony that he elevates his feet a little bit higher than waist level to alleviate swelling is consistent with the medical evidence in the record. (A.R. 79-80). Because the ALJ's RFC did not consider the "aggregate effect" of Plaintiff's symptoms, specifically Plaintiff's edema, *see Golembiewski*, 322 F.3d at 918, and because he rejected the entire line of evidence pertaining to Plaintiff's need to elevate his legs, *see Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994), this Court cannot determine whether substantial evidence supports the ALJ's conclusion that Plaintiff can perform "light work" and must remand the RFC determination. On remand, the ALJ must consider the "entire constellation" of Plaintiff's ailments. *See Golembiewski*, 322 F.3d at 918. If the ALJ finds that Plaintiff's edema does not contribute to his limitations, he must explain why he finds Plaintiff's testimony and the medical evidence indicating his need to elevate his legs to be incredible.

Plaintiff also argues that the ALJ summarized the evidence but failed to explain how it demonstrated an ability to perform light work, and that he failed to provide a "narrative discussion" of the evidence as required by SSR 96-8P. (*Id.* at 12-13.) The Commissioner argues that the ALJ stated his reliance on Dr. Kenney's opinion, observed that Dr. Mallick's 2009 opinion stated that Plaintiff "was able to do light physical activities with some restrictions," and found that Dr. Neerukonda also concluded that Plaintiff could "perform light work related activities." (R. 28, Def.'s Mem. at 10-11) (quoting A.R. 37).

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical

evidence (e.g., daily activities, observations)." SSR 96-8P, 61 Fed. Reg. at 34478. In this narrative, the ALJ

> must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* Here, the ALJ failed to "include a narrative discussion" describing *how the evidence supports* his RFC assessment. While the ALJ described the evidence itself and then summarily stated that "the above residual functional capacity assessment is supported by medical evidence of record and medical opinions," (A.R. 38), he did not build a "logical bridge" between the evidence he described and his conclusions, *see Craft*, 539 F.3d at 673.

Where the ALJ has erred by failing to build a "logical bridge," the Court looks at the evidence in the record to determine whether it "can predict with great confidence what the result on remand will be." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). The Court will not remand a case to the ALJ for further specification when the Court is convinced that the ALJ will reach the same result. *Id.* (citing *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)). Here, the ALJ's failure to address the limiting effects of Plaintiff's edema is a significant omission. According to the VE's testimony, the lower extremity limitations listed in Dr. Mallick's 2009 opinion preclude Plaintiff from "performing any type of work." (A.R. 89.) In light of the ALJ's failure to consider the significant limitations listed in Dr. Mallick's 2009 and 2010 opinions, it is not obvious whether the ALJ will again conclude that Plaintiff is able to perform "light work" on remand. *See McKinzey*, 641 F.3d at 892. Accordingly, it is appropriate to remand the RFC determination.

On remand, the ALJ must consider the entire record and all of Plaintiff's limitations in making his RFC determination. If the ALJ finds that Plaintiff's leg elevation limitation is not supported by substantial evidence in the record, he must explain how he arrived at that conclusion. *See Hickman*, 187 F.3d at 689.

### B. The ALJ's Consideration of Plaintiff's Obesity

Finally, Plaintiff argues that the ALJ erred in his RFC assessment because he failed to consider the effect of Plaintiff's obesity on his heart condition. (R. 20, Pl.'s Br. at 13.) An ALJ's "failure to consider the effect of obesity is subject to harmless-error analysis." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). The Commissioner argues that the ALJ observed that "there is no medical evidence that the claimant's obesity severely limits his ability to perform basic work activities." (R. 28, Def.'s Mem. at 11) (quoting A.R. 34). The Commissioner further argues that Plaintiff does not point to any such evidence, only notes his congestive heart failure, and that there is no such evidence in the record. (*Id.*) Thus, the Commissioner contends, the ALJ was not required to "delve into the impact of [Plaintiff's] weight." (*Id.*)

In *Prochaska v. Barnhart*, the Seventh Circuit held that "any error on the ALJ's part [in not explicitly considering the plaintiff's obesity] was harmless" because the ALJ implicitly considered the plaintiff's obesity through his review of medical reports that explicitly considered it. 454 F.3d at 737. The ALJ had "specifically predicated his decision upon the opinions of physicians who did discuss [the plaintiff's] weight." *Id.* Because none of those opinions, while mentioning her weight, indicated that the plaintiff's obesity contributed to her physical limitations, and because the plaintiff failed to provide any medical evidence or testimony indicating that her obesity contributed to her physical limitations, the Seventh Circuit held that the ALJ did not err by failing to explicitly consider the plaintiff's obesity in his decision. *Id.*

27

Here, the ALJ noted Plaintiff's obesity as an impairment that did not severely limit his ability to perform job tasks. (A.R. 34.) Substantial evidence supports the ALJ's determination that Plaintiff's obesity is a "non-severe impairment": Plaintiff never testified that his obesity significantly interfered with his ability to perform daily activities, and the medical evidence and testimony indicate that any limiting effects of Plaintiff's obesity (such as his need to elevate his legs) were actually due to the swelling caused by his water retention and not to his weight. (*See, e.g.*, A.R. 77-79.) Plaintiff's obesity was well-documented in the medical evidence, but no physician indicated that his obesity contributed to his limitations. Additionally, as in *Prochaska*, the ALJ "specifically predicated his decision upon the opinions of physicians who" discussed Plaintiff's obesity. 454 F.3d at 737. The ALJ's consideration of Plaintiff's medical records was thus sufficient consideration of his obesity. *See id.* at 736-37 (citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)). The Court finds that the ALJ's decision would not be different if he explicitly considered the effects of Plaintiff's obesity than if he implicitly considered it by adopting opinions of doctors who noted and considered his obesity when making their recommendations, as here. *See Skarbek*, 390 F.3d at 504 (noting that "any remand for explicit consideration of [the plaintiff's] obesity would not affect the outcome of this case because the plaintiff failed to specify how his obesity contributed to his physical limitations but merely speculated "that his weight ma[de] it more difficult to stand and walk," and because "the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of [the plaintiff's] obesity"). Accordingly, the ALJ's failure to explicitly consider Plaintiff's obesity was harmless.

## CONCLUSION

For the reasons set forth above, the Court DENIES the Commissioner's motion for summary judgment (R. 27). The Court reverses the ALJ's decision and remands this case for proceedings consistent with this opinion pursuant to 42 U.S.C. § 405(g). The Court directs the Clerk to enter judgment in favor of Mills and against the Commissioner.

ENTERED: _____

**Chief Judge Ruben Castillo**
**United States District Court**

**Dated: August 14, 2013**